Matthias, J.
 

 The single question presented by the record in this case is whether Mrs. Jeanette Farloo was entitled to participate in the benefits provided by the unemployment compensation statutes. The statutes of Ohio providing for such compensation are
 
 *266
 
 found in Section 1345-1
 
 et seq.,
 
 General Code. It is to be observed that these statutes are extremely liberal and unemployment benefits are thereby provided even where the employee is discharged for just cause in connection with his work or voluntarily quits his work without just cause, but in such instances the employee shall have a waiting period of three additional weeks during which no benefits are payable, and also a reduction in the number of weeks compensation is payable.
 

 Section 1345-6, General Code, which is the portion of the unemployment compensation law pertinent here, provides as follows:
 

 “Each eligible individual shall receive benefits 'as compensation for loss of remuneration due to total or involuntary partial unemployment in the amounts and subject to the conditions stipulated in this act; but no benefits shall be paid for total or partial unemployment occurring prior to January 1, 1939.
 

 “a. No individual shall be entitled to any benefits unless he or she * s ®
 

 “(4) is able to work and available for work in his usual trade or occupation, or in any other trade or occupation for which he is reasonably fitted; and
 

 “(5) is unable to obtain work in his usual trade or occupation or any other employment for which he is reasonably fitted including employments not subject to this act.
 

 “b. An individual suffering total or partial unemployment shall be eligible for benefits for unemployment occurring subsequent to a waiting period of two weeks and no benefits shall be or become payable during this required waiting period, but no more than a total of two weeks of waiting period or periods shall be required of any such individual in any benefit year in order to establish his eligibility for total or partial unemployment benefits under this act; except that:
 

 
 *267
 
 “An individual who has been discharged for just, cause in connection with his work or who has voluntarily quit his work without just cause and thereafter is unable to secure other employment, shall have a waiting period of three additional weeks during which no benefits shall be payable. * * *
 

 “c. An individual’s maximum weeks of benefits per year shall be reduced by six weeks in the event his unemployment results from discharge for just cause in connection with his work, or from voluntarily quitting his work without just cause in connection with such work. ’ ’
 

 However, a clear exception to the above stated general provision was made by the specific provision of part “d” of Section 1345-6, General Code, as then in effect, which is in part as follows:
 

 “d. Notwithstanding the provisions of subsection (■a) of this section, no individual may serve a waiting period or be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual: * * *
 

 “(7) quit work voluntarily to marry or because of marital obligations.”
 

 By amendment effective September 28, 1943 (120 Ohio Laws, 682), the word “voluntarily” was eliminated from this subsection. Other amendments were made to the act, but are immaterial here.
 

 The right of the claimant to participate in this fund rests upon and must be determined by this latter section. Its language is clear and unambiguous. In express and specific terms it absolutely prohibits and precludes the payment of unemployment benefits to one who “quit work” voluntarily to marry or because of marital obligations. This provision constitutes a clear exception to parts “b” and “c” under which unemployment benefits are payable to one quitting his
 
 *268
 
 work without just cause in connection with such work.
 

 This exception seems to apply even in cases where the availability of the employee for other employment is clearly established. Under the clear and express terms of the statute a person who has so quit work cannot establish availability. The unequivocal statement therein that “no individual may * * * be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual * * * quit work voluntarily * * * because of marital obligations” leaves for determination the single question whether Mrs. Farloo quit work “because of marital obligations.”
 

 The phrase “marital obligations” is very broad and applicable to many situations other than the particular one involved in this case. Any attemt to define the term generally would be gratuitous. Bouvier’s Law Dictionary, Rawle’s Third Revision, defines “marital” as “That which belongs to marriage; as marital rights, marital duties.”
 

 The finding of the administrator that Mrs. Farloo had quit her work because of marital obligations was based upon evidence before him. That conclusion was approved by the majority of the board of review; with that conclusion we are in accord. It is apparent that when the claimant resigned her position and thereby definitely quit work to remain in the South with her husband it was because she conceived such action to be her marital obligation. A marital obligation presumably arises from the marital relation itself, and when a wife definitely quits her work to live with her husband in another part of the country, it is pursuant to her marital obligation. Therefore, under the provisions of Section 1845-6, part “d,” General Code, Mrs. Farloo was completely ineligible for unemployment benefits during the period prior to March
 
 *269
 
 15, 1943, which is the only period involved in this controversy. Her status with reference to such compensation was not altered by her act of registering during that period for subsequent employment.
 

 Other states have had a variety of statutory provisions covering the subject of unemployment compensation, some of which, in dealing with the question of disqualification, particularly as to the effect of quitting work because of marital obligation, are substantially the same as the provisions of the Ohio statute above quoted. Although there appears to have been no decisions of courts of last resort construing and applying those provisions, they have generally been administered in accordance with the conclusion to which we are impelled by force of the clear and unequivocal language employed in these statutory provisions. In our view, a contrary construction and application would be tantamount to legislative action, which is the province of the legislative and not the judicial branch of the government.
 

 Other questions presented by the record become unimportant and are therefore not discussed or decided.
 

 It follows that the judgment of the Court of Appeals should be and is hereby reversed, and final judgment is rendered against the claimant.
 

 Judgment reversed.
 

 Weygandt, C. J., Zimmerman, Bell, Williams, Turner and Hart, JJ., concur.