LUKE *v.* MISSISSIPPI EMPLOYMENT SECURITY COMMISSION.

No. 41516          September 26, 1960       123 So. 2d 231

*Laurel G. Weir,* Philadelphia, for appellant.

*Gordon L. Smith,* Jackson, for appellee.

McELROY, J.

Ruth Luke, the appellant, appeals from the Circuit Court of Neshoba County, Mississippi, affirming the decision of the Board of Review of the Mississippi Employment Security Commission. The decision of the circuit court was to deny to the appellant unemployment compensation benefits under the Mississippi Employment Security Law, Section 7368, et seq., Miss. Code, 1942, as amended.

The appellant filed an initial claim for benefits under the Mississippi Employment Security Act of February 12, 1959, stating that she voluntarily quit work on July 1, 1958, and stated that she had to quit work because of pregnancy. On February 17, 1959, appellant was sent a notice of disqualification beginning July 2,

1958, and continuing until she had earned remuneration for personal services in an amount equal to eight times her weekly benefit amount, or $208, for quitting work voluntarily without good cause. In explanation of this disqualification, the claim examiner for the appellee advised the appellant "Your reason for leaving work is a marital, filial, or domestic circumstance or obligation and therefore cannot be deemed good cause under the provisions of the Law."

The appellant, a married woman, continued her effort to obtain unemployment compensation by appealing to the Referee and Board of Review of the Mississippi Employment Security Commission, and on each appeal she was held to be disqualified for leaving work without good cause. Pursuant to the provisions of the Mississippi Employment Security Act, appellant filed a petition for a judicial review in the Circuit Court of Neshoba County, Mississippi, and the said court, by its order, affirmed the decision of the Board of Review.

Section 7379(a), Miss. Code of 1942, as amended, provides as follows: "For the week, or fraction thereof, which immediately follows the day on which he left work voluntarily without good cause, if so found by the commission, and for each week thereafter until he has earned remuneration for personal services (whether performed for an employer as in this act defined or otherwise) equal to not less than eight times his weekly benefit amount, as determined in each case, *provided that marital, filial, and domestic circumstances and obligations shall not be deemed good cause within* the meaning of this subsection." (Emphasis supplied.)

The appellant assigns error in the lower court that the decision of the Mississippi Employment Security Commission and the Circuit Court of Neshoba County, Mississippi, is not supported by the law or evidence, and the Commission and the Circuit Court erred in not granting appellant her compensation.

■■ ■ The point for decision is whether pregnancy of a married woman leaving work is considered voluntary and without good cause, or that the state of pregnancy shall not be deemed good cause within the meaning of being a marital, filial, and domestic circumstance or obligation. The appellant does not discuss this question in the brief but claims that if the Legislature had intended for women to be disqualified on account of pregnancy, it would have been spelled out in the statute. The appellee submits that it would have been impractical, if not impossible, for the Legislature to specify each and every marital, filial and domestic circumstance and obligation that might occur to cause an employee to leave his or her employment.

In Mills v. Miss. Employment Security Commission, 228 Miss. 789, 89 So. 2d 727, under employment security law, in order to claim unemployment benefits, unemployment must be involuntary and benefits must be used for persons unemployed through no fault of their own.

Under employment security law an unemployed individual is eligible for benefits only if he is "available for work."

"In Labor & Industry Dept. v. Unemployment Comp. Bd. (1938), 133 Pa. Super. Ct. 518, 3 A. (2d) 211, the word 'voluntarily' as used in the Pennsylvania Unemployment Compensation Act, providing that a workman who voluntarily leaves his work shall be ineligible for compensation, having regard to the purpose and intent of the act considered as a whole, was held to mean 'of one's own motion' or 'of one's own accord.' It was held that the meaning of the phrase 'voluntarily leaving work' and the question whether it applied to the undisputed facts of the case were questions of law and were within the jurisdiction of the superior courts; also, that subject to the special exception stated in the Unemployment Compensation Act relative to labor organizations, etc., where an employee without action by the employer resigns, leaves, or quits his employment,

his action amounts to 'voluntarily leaving work' within the meaning of the act so as to render him ineligible for unemployment compensation. It was held that the action of one employed to deliver milk for a dairy company amounted to 'voluntarily leaving work' within the meaning of the Unemployment Compensation Act and that he was ineligible for unemployment compensation, where he quit work because his physiciaan advised him to give up his position on account of a rheumatic condition which caused pains in his feet and legs that were aggravated by his being on his feet and jumping in and out of the wagon in all kinds of weather, the court stating that to explore the reasons or mental process which led to the claimant giving up his employment was not within the province of the board of review.'' Anno. 141 A.L.R. 101.

In the case of Farloo v. Champion Spark Plug Co., et al., 61 N. E. 2d 313, (Supreme Court of Ohio, May 16, 1945), the subject of marital obligation was dealt with in one of the sections of the law as follows:

''Section 1345-6, General Code, which is the portion of the unemployment compensation law pertinent here, provides as follows:

\* \* \* \*

''(7) Quit work voluntarily to marry or because of marital obligations.

''By amendment effective September 28, 1943 (120 Ohio Laws, 682) the word 'voluntarily' was eliminated from this subsection. Other amendments were made to the act, but are immaterial here.

''The right of the claimant to participate in this fund rests upon and must be determined by this latter section. Its language is clear and unambiguous. In express and specific terms it absolutely prohibits and precludes the payment of unemployment benefits to one who 'quit work' voluntarily to marry or because of marital obligations. This provision constitutes a clear exception to parts 'b' and 'c' under which unemployment

benefits are payable to one quitting his work without just cause in connection with such work.

"This exception seems to apply even in cases where the availability of the employee for other employment is clearly established. Under the clear and express terms of the statute a person who has so quit work cannot establish availability. The unequivocal statement therein that 'no individual may * * * be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual * * * quit work voluntarily * * * because of marital obligation' leaves for determination the single question whether Mrs. Farloo quit work 'because of marital obligations.'

"The phrase 'marital obligations' is very broad and applicable to many situations other than the particular one involved in this case. Any attempt to define the term generally would be gratuitous. 2 Bouv. Law Dict., Rawle's Third Revision, p. 2091, defines 'marital' as 'That which belong to marriage; as marital rights, marital duties.'

"The finding of the administrator that Mrs. Farloo had quit her work because of marital obligations was based upon evidence before him. That conclusion was approved by the majority of the board of review; with that conclusion we are in accord. It is apparent that when the claimant resigned her position and thereby definitely quit work to remain in the South with her husband it was because she conceived such action to be her marital obligation. A marital obligation presumably arises from the marital relation itself, and when a wife definitely quits her work to live with her husband in another part of the country, it is pursuant to her marital obligation. Therefore, under the provisions of Section 1345-6, part 'd', General Code, Mrs. Farloo was completely ineligible for unemployment benefits during the period prior to March 15, 1943, which is the only period involved in this controversy. Her status with

reference to such compensation was not altered by her act of registering during that period for subsequent employment."

In Ex Parte Alabama Textile Products Corp., 242 Ala. 609, 7 So. (2d) 303, in an Annotation at pp. 102-103, it is said that in the case of Steinburg v. Miller (1942), 263 App. Div. 916, 32 NYS (2d) 197, the evidence was held to sustain a finding that a claimant for unemployment insurance had withdrawn herself from the labor market and was unavailable for employment and not entitled to unemployment insurance, where there was evidence that she had relinquished her employment because of her pregnancy.

This law was later amended by the Alabama Legislature, changing the law exempting pregnancy.

In the case of Alexander v, Alexander, 139 A. 685, it is said: "Marital rights and duties are those which arise from the contract of marriage and constitute its object; they therefore embrace what the parties to a marriage contract mutually agree to perform towards each other and to society. Kilburn v. Kilburn, 89 Cal. 46, 26 P. 636, 23 Am. St. Rep. 447; 5 Words and Phrases, First Series, p. 4373."

It is clear therefore that pregnancy of a married woman is clearly a condition arising out of "marital, filial, and domestic circumstances and obligations." To hold otherwise would destroy established laws and customs involving the family.

It follows that the judgment of the court below is affirmed.

Affirmed.

*Hall, P. J., Holmes, Ethridge* and *Gillespie, JJ.,* concur.

## ON MOTION TO RETAX COSTS

The appellant has filed a motion to retax the costs in this case. The grounds for the motion is that the cost should not be allowed to the circuit court for the

reason that they are grossly excessive and the bill was not made out according to law. An examination of the record herein shows that the clerk's certificate of cost for the transcript of record is $55.24 and does not show the number of words in the transcript. The transcript consists of forty-four pages. The clerk is allowed 25¢ for every hundred words, and four figures shall be considered one word according to Section 3934 (Amended) of the Code of 1942, Recompiled. As to the circuit clerk, we do not find her certificate showing the number of words transcribed.

We are of the opinion that the motion is well taken and is sustained. However, the circuit clerk is allowed thirty days within which to furnish the Clerk of the Supreme Court certified statements of the costs as provided by law. Superior Oil Company v. Foote, 216 Miss. 728, 63 So. 2d 137, 64 So. 2d 355, 65 So. 2d 453; Neshoba County Gin Association, (AAL) Inc. v. Norvel Johnson, 87 So. 2d 927 (Miss.)

Motion sustained.

*Hall, P. J.,* and *Holmes, Ethridge,* and *Gillespie, JJ.,* concur.