344 So.2d 137 (1977)
Gloria J. SMITH
v.
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION.
No. 49226.
Supreme Court of Mississippi.
March 30, 1977.
Barry H. Powell, Stella L. Terrell, Jackson, for appellant.
Fred J. Lotterhos, Jr., Jackson, for appellee.
Before GILLESPIE, SMITH and WALKER, JJ.
*138 WALKER, Justice.
Mrs. Gloria J. Smith, who was laid off from her job at Desoto, Inc., of Jackson while on leave of absence due to pregnancy, made application for unemployment benefits from the Mississippi Employment Security Commission. She was denied benefits on the grounds that she had left work because of pregnancy. This decision was reaffirmed on application for reconsideration by a referee of the Board of Review, as well as by the entire Board of Review of the Commission. In its opinion, the Board of Review concluded:
In the instant case, Claimant is deemed to have "left work voluntarily", within the meaning of the Law on August 30, 1974, notwithstanding the fact that she expected to return to work after the birth of her baby and that she had obtained a maternity leave of absence in accordance with company policy. The fact that she was later placed on lay-off status by her employer, due to lack of work, is likewise immaterial. The determination as to whether an individual is subject to disqualification under the above section [Mississippi Code Annotated section 71-5-513A(L) (1972)] is based upon the individual's reason for leaving work at the time she did leave work rather than on her reason for not returning to work at some later date. In this case, the Claimant's reason for leaving work on August 30, 1974, was the fact of her pregnancy. Pregnancy of a married woman, as in this case, is deemed to be a marital circumstance, which cannot be deemed "good cause" for leaving work under the above section of the Law.
The decision of the Board of Review was affirmed by the Circuit Court of the First Judicial District of Hinds County, Mississippi.
In her appeal, Mrs. Smith first contends that the Commission and the court misinterpreted Mississippi Code Annotated section 71-5-513A(1) (1972). That section reads:
A. An individual shall be disqualified for benefits:

*139 (1) For the week, or fraction thereof, which immediately follows the day on which he left work voluntarily without good cause, if so found by the commission, and for each week thereafter until he has earned remuneration for personal services (whether performed for an employer as in this chapter defined or otherwise) equal to not less than eight (8) times his weekly benefit amount, as determined in each case, provided that marital, filial, and domestic circumstances and obligations shall not be deemed good cause within the meaning of this subsection.
Mrs. Smith further argues that the quoted section, assuming it was properly interpreted by the Commission and the court, violates provisions of the Federal Social Security Act. Furthermore, she contends that this provision denies her due process of law and equal protection of the laws, as secured by the Fourteenth Amendment to the United States Constitution. We need not reach the federal questions presented by Mrs. Smith, since we have concluded that the Commission erred in its determination that she left work within the meaning of the statute on August 30, 1974, instead of December 3, 1974.
The facts in this case are not in dispute. Mrs. Smith took a leave of absence from her position as an accounting clerk at Desoto, Inc., on August 30, 1974, because of her pregnancy. Her employer informed the Commission that it was company policy to grant a three-month leave of absence for pregnancy without terminating the employment. Pursuant to their agreement, Mrs. Smith was supposed to return from leave on December 3, 1974. However, prior to that time, she was informed that because of declining business conditions her position had been temporarily eliminated, and she was being "involuntarily" laid off. Mrs. Smith does not seek to recover benefits for the period of her leave of absence, but seeks benefits only from December 3, 1974.
This Court held in Luke v. Mississippi Employment Security Comm'n, 239 Miss. 292, 123 So.2d 231 (1960), that pregnancy falls within the meaning of "marital, filial, and domestic circumstances and obligations," as defined by the statute, and does not constitute good cause for leaving work. Mrs. Smith does not challenge this holding. Rather, she contends that she did not leave work because of her pregnancy, but only took a leave of absence. She asserts that her employment continued until she was involuntarily laid off on December 3, 1974.
Precisely this same contention was presented to the Court in Franklin v. Mississippi Employment Security Comm'n, 242 Miss. 447, 136 So.2d 197 (1961). The Court did not explicitly discuss the question, but relied without elaboration on Luke, supra. Thus, the Court implicitly held that the claimant left work when she began her leave of absence. This reasoning was made more explicit by dictum in Mississippi Employment Security Comm'n v. Stafford, 248 Miss. 95, 98, 158 So.2d 55, 56 (1963). We believe that both reason and precedent require that the holding of Franklin be overruled and the dictum in Stafford be disavowed.
Mrs. Smith did not leave her employment, but temporarily suspended it pursuant to an agreement with her employer. Such temporary suspensions of a continuing employment are common. Employees may be allowed vacation without pay, or they may arrange leaves of absence, for instance, because of illness or duty with the military reserve. In none of these cases can it reasonably be asserted that the employee has left work. If, during his leave, his position is terminated, he cannot be said to have left work voluntarily. Likewise, it seems to us that when an employer grants an employee a leave of absence because of pregnancy, she has not left work within the meaning of the statute.
This reasoning is supported by our opinion in Mississippi State Employment Security Comm'n v. Jackson, 237 Miss. 897, 116 So.2d 830 (1960). That is the only case in which this Court has explicitly considered the question of a temporary interruption of work without pay pursuant to an agreement between the employer and the employee. *140 In that case, the collective bargaining agreement between the employer and its employees provided that the plant would be closed for one week at Christmas. Employees with sufficient seniority would be paid for that week; employees without that seniority would not be paid. In 1957, the plant closed down for three weeks at Christmas, because of excess inventory.[1] Employees with sufficient seniority were paid for Christmas week, as provided in the agreement, but not for the other two weeks. The rest of the employees were not paid at all. The latter group made application for unemployment benefits, and were allowed benefits the first and third weeks, though not for the second week, during which the plant was closed pursuant to the collective bargaining agreement. This Court concluded that during the week that those employees had agreed not to work and not to be paid, they were not unemployed within the meaning of the statute. In his opinion, Justice Gillespie wrote:
The shutdown for Christmas week was in accordance with the union contract and the union represented all of the appellees. It cannot be said that the appellees were unemployed within the meaning and purpose of the statute. They were not laid off; their employment had not been terminated, and the relationship of employer and employee continued during the week the plant was closed for the purposes stated. (Id. at 901, 116 So.2d at 832).
The Court went on to hold that the employees were entitled to unemployment benefits for the week following the week in which they had failed to work pursuant to their agreement.
Mrs. Smith's case presents a similar situation. On August 30, 1974, she and her employer agreed that she would not work until December 3, 1974, and that she would not be paid for that time. Like the employees in Jackson, supra, she was entitled to return to work at the end of that period only if there was work available. As in Jackson, it cannot be said that she was laid off, and it cannot be said that her employment was terminated. When there was no work for her at the end of the agreed period, she was entitled to unemployment benefits, just as the workers in Jackson were entitled to unemployment benefits for the third week of their Christmas layoff. It is immaterial that her leave of absence was pursuant to an individual agreement between her and her employer, rather than in accordance with a collective agreement as in Jackson. Therefore, we conclude that Mrs. Smith left work within the meaning of the statute at the end of her leave of absence, on December 3, 1974, because of the reduction in her employer's work force and not because of her pregnancy.
The Supreme Court of Louisiana faced precisely the same question in Southern Bell Tel. & Tel. Co. v. Administrator, Division of Employment Security, 252 La. 519, 211 So.2d 634 (1968). In that case, the claimant had taken a leave of absence due to her pregnancy, pursuant to the agreement in effect with her employer. At the end of her leave, she was informed that no work was available for her. The Court concluded:
Hence, the fundamental and underlying cause of Mrs. Middleton's unemployment following her application for reinstatement was not her prior condition of pregnancy but the then existing unavailability of work on the part of the employer, and it was only at this time that she "left (her) employment" and accordingly, such leave was for "good cause connected with (her) employment." (Id. at 526, 211 So.2d at 636.)
This opinion does not detract form our holding in Mississippi Employment Security Comm'n v. Corley, 246 Miss. 43, 148 So.2d 715 (1963), and Luke, supra. In this opinion, we hold only that Mrs. Smith's employment continued during her pregnancy, by virtue of an explicit agreement with her employer that she would be on leave of *141 absence for three months and that she would have a job when she returned at the end of that period. Had she quit work without any such agreement, as in Luke and Corley, she would be deemed to have left work voluntarily. In this case, Mrs. Smith and her employer agreed to continue her employment during her pregnancy. Her employment was terminated involuntarily at the end of her leave of absence because of the reduction in her employer's work force. Thus, the Commission clearly erred in holding that she left work within the meaning of the statute at the beginning of her pregnancy leave.
The case is therefore remanded to the Commission with instructions to grant Mrs. Smith the unemployment benefits to which she is entitled, beginning December 3, 1974.
REVERSED AND REMANDED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, BROOM and LEE, JJ., concur.
NOTES
[1] The plant was closed from December 13, 1957, until January 6, 1958. The claims examiner concluded that the claimants had contracted not to work during the second week (Christmas week) of the three-week layoff. Id. at 898-99, 116 So.2d at 831.