357 So.2d 312 (1978)
SOUTH CENTRAL BELL TELEPHONE COMPANY
v.
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION et al.
No. 50145.
Supreme Court of Mississippi.
April 5, 1978.
*313 Butler, Snow, O'Mara, Stevens & Cannada, George H. Butler, Stephen W. Rosenblatt, Roger M. Flynt, Jr., Jackson, for appellant.
Fred J. Lotterhos, Jackson, for appellees.
Before SMITH, P.J., and ROBERTSON and LEE, JJ.
SMITH, Presiding Justice, for the Court:
This is an appeal by South Central Bell Telephone Company from a judgment of *314 the Circuit Court of the First Judicial District of Hinds County, Mississippi affirming an order of the Mississippi Employment Security Commission Board of Review granting unemployment compensation benefits to ten persons employed by Bell, appellees here, and charging these benefits to Bell's experience rating.
In the Fall of 1973, South Central Bell notified its long-distance telephone operators in its Cleveland office that their positions would be phased out in approximately eighteen months. On April 19, 1975, South Central Bell closed its offices in Cleveland, Mississippi and, pursuant to its collective bargaining contract with Communication Workers of America, South Central Bell provided these operators with three alternatives. First, they might transfer to another office; second, they might terminate their employment and collect severance pay; and third, they might go on leave of absence for as much as one year.
There were approximately twenty-six operators who were affected by the closing of the Cleveland office. Of these twenty-six, sixteen elected to transfer to the Greenville, Greenwood or Clarksdale offices. The remaining ten declined to transfer, assigning as their reason the distance they would have to commute to and from work and the alleged uncertainty of their working hours if they did transfer and commute. Five of these ten operators who decided not to transfer chose to terminate their employment and accept severance pay. The other five elected to take a leave of absence.
Shortly after the Cleveland office closed, each of the ten former operators filed a claim with the Mississippi Employment Security Commission for unemployment compensation. After due investigation, the Claims Examiner found that each claimant was disqualified from receiving benefits because of their failure to accept an offer of suitable work. Each of the claimants appealed from that ruling to the Appeals Referee of the Employment Security Commission. The Appeals Referee reversed the decision of the Claims Examiner and held that each of the ten operators was entitled to benefits because the offer to transfer them to other towns did not constitute an offer of suitable work because of the distance each would have to travel.
South Central Bell appealed the Referee's decision to the Board of Review of the Employment Security Commission. The decision of the Referee was affirmed by the Board of Review following a hearing on the matter. From this decision, South Central Bell filed a Petition for Review in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Mississippi Code Annotated section 71-5-531 (1972). On January 10, 1977, an order was entered in that court affirming the decision of the Board of Review.
Numerous grounds for reversal are assigned, but, since both appellant and appellees have organized their arguments on the propositions into three categories, they will be considered in the same manner.
1. Were the appellees disqualified from receiving benefits under Mississippi Code Annotated section 71-5-513(A)(4)(a) (1972) for failing to accept available, suitable work offered to them?
Mississippi Code Annotated, section 71-5-513(A)(4)(a) (1972), provides:
(4) If the commission finds that he has failed, without good cause, either to apply for available suitable work when so directed by the employment office or the commission, to accept suitable work when offered him, or to return to his customary self-employment (if any) when so directed by the commission, such disqualification shall continue for the week in which such failure occurred and for not more than the twelve (12) weeks which immediately follow such week, as determined by the commission according to the circumstances in each case.
(a) In determining whether or not any work is suitable for an individual, the commission shall consider among other factors the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local *315 work in his customary occupation, and the distance of the available work from his residence.
It is unquestioned, in the case sub judice, that appellees were offered the same type of employment in which they had been engaged, in other Bell offices, i.e., Clarksdale, Greenwood and Greenville. The Board of Review stated in its opinion that these offers were, in fact, made. The issue is whether the work offered constituted "suitable" work. The Board of Review found that the work offered was not suitable because of the distance each appellee would be required to travel. Evidence showed that from Cleveland to Clarksdale was forty-three miles; to Greenwood thirty-eight miles and to Greenville thirty-five miles.
The test used to determine whether the distance to be travelled rendered the available work "unsuitable" is whether it is unusual or uncommon for employees in the claimant's occupation or in the area in which claimant resides to drive that distance to work. See Graham v. Mississippi Employment Security Commission Decision No. 244-R-61 (1962). Consistent with the Graham decision is In re Foshe, 46 BR-75 (1975), which presented an almost identical fact pattern as the case now under consideration. In Foshe the claimant's job in New Albany, Mississippi was phased out and she was offered a transfer to the same job in Tupelo, Mississippi. This was a distance of approximately thirty-six miles, one way. The Board held that this was an offer of suitable work and as a result of claimant's refusing it, she was disqualified from receiving unemployment compensation benefits. See also In re Bolton, 60-63-BR-75 (1975).
Bell contends that the Board of Review used the wrong test in deciding whether the distance was so great as to render the work unsuitable. The Board decided that since most of the employees of appellant did not commute, then the work offered was unsuitable. Appellant contends that the proper rule is whether it is unusual or uncommon for a worker in that area to commute thirty or thirty-five miles to work. Evidence showed that twenty-six of the one hundred twenty employees at the Greenwood office commute daily from distances ranging from eight to forty-two miles one way; fourteen of the one hundred eighteen employees at the Greenville office commute a distance ranging from fifteen to fifty miles one way; and eleven of fifty-five employees at the Clarksdale office commute daily from a distance ranging from eight to thirty-seven miles one way.
Testimony further showed that ten of the operators who were employed at the Cleveland office transferred and now commute from Cleveland daily. (Eight go to Greenville and two go to Clarksdale). Although none of the cases cited in the argument relate a specific test to be applied, it seems that the "unusual or uncommon" rule is preferable over a mere "head count" rule where the majority wins. The decision of the Board of Review was wholly inconsistent with its previous decisions in Foshe and Bolton, supra.
In argument, appellees suggest that there are "subtle differences" between this case and the New Albany-Tupelo case, but fail to point them out. The Court takes judicial notice, as a matter of common knowledge, that commuting is a fact of modern life and that a very great many workers commute daily distances comparable to those in this case. Certainly the roads in the flat, level Delta are no more difficult or unsafe, or more dangerous to morals or health than Highway 78 with its curves and hills in the Northeast part of our state. Since the work offered to these ladies was suitable, their refusal to accept disqualifies them from receiving unemployment benefits under the statute.
The Board also said that there was a substantial prospect for securing similar work in the Cleveland area. The evidence does not support this proposition. A witness testified that he knew of only about six positions (called PBX's) in the Cleveland area in which a person skilled and trained as a telephone operator could find suitable employment. Several of the appellees testified that they had applied at the banks *316 around Cleveland, but had not found employment. None testified that she had applied at any of the PBX's which Mr. Clark testified about.
One of the operators involved in this case, Sherry Holland, was the chief operator at appellant's office in Cleveland. At the time the Cleveland office was closed, there was, and still is, an opening for a chief operator at the Greenwood office. She was offered either this job or a job as a regular operator at either of the other two offices, but she declined them, she said, because of the distance she would have to travel and the uncertain hours that she might have to work. There was some dispute as to whether the chief operator job was formally offered to her, but it appears that it was and that she was not interested. At any rate, it was brought out at the hearing that the job was open and that she could have it, but she made no statement tending to show that she would take it. Instead, she took a leave of absence.
2. Were appellees ineligible for benefits under Mississippi Code Annotated Section 71-5-511 (1972), since they were not "available for work" because they unreasonably restricted the terms and conditions under which they would accept employment?
Bell contends that by refusing to transfer to Clarksdale, Greenwood or Greenville, the appellees put such an unreasonable restriction upon their availability for work that they are disqualified under the statute from receiving unemployment benefits. Mississippi Code Annotated, Section 71-5-511(c) (1972) provides that the claimant must be "available for work". In Mississippi Employment Security Commission v. Blasingame, 237 Miss. 744, 116 So.2d 213 (1959), this Court stated:
The words "available for work" imply that in order that an unemployed individual be entitled to benefits he must be willing to accept any suitable work which may be offered him without attaching thereto restrictions or conditions not usual or customary in that occupation, but which he may desire because of his particular needs or circumstances. Unemployment Compensation Commission v. Tomko, 192 Va. 463, 65 S.E.2d 524, 25 A.L.R.2d 1071. The burden is upon the unemployed individual to show the required conditions have been met entitling him to benefits. Department of Industrial Relations v. Tomlinson, 251 Ala. 144, 36 So.2d 496. It has been held that the test of availability is subjective in nature and must depend in part on the facts and circumstances of each case. A factor to be considered is claimant's mental attitude, that is, whether he wants to go to work or is content to remain idle.
.....
It has already been noted that few jobs, of the kind for which the appellees were specially trained, were available in the Cleveland area. It has also been shown that it was not unusual for operators in that area to commute twenty-five to thirty miles to work. As stated in Blasingame, supra, the burden is upon the claimant to show that he or she left work involuntarily and is now available for suitable work if offered. Appellees failed to meet this burden, and have unduly restricted their availability for suitable work, thus disqualifying them from unemployment benefits.
3. Were the five appellees who elected to take leaves of absence disqualified because they had not terminated their employment but only had suspended it?
Five of the appellees were "unemployed" because they chose to go on leave of absence. As noted, all of the operators were offered three options at the time the Cleveland office was being phased out. One of the options was to go on leave of absence for up to one year. The effect of electing to go on leave of absence was that the employee might return to work at any time during the span of one year and would not lose her seniority. Seniority was important because it determined who had preference in selecting work-hours and also the amount of severance pay they would receive upon termination of employment. Moreover, any employee on leave of absence remained under the group life insurance umbrella provided by the company and received a concession *317 of forty percent discount on their local telephone bills. Appellees, Cobb, Cruse, Goss, Holland and Joiner, all refused to transfer because of the distance they would have to travel to work. But instead of terminating their employment, they accepted the leave of absence option.
Although this Court has never addressed the issue on the precise facts presented here, it has interpreted the phrase "unemployed" on two occasions when dealing with employees on a leave of absence. In the case of Mississippi Employment Security Commission v. Jackson, 237 Miss. 897, 116 So.2d 830 (1960), it was held that employees who take vacations without pay pursuant to a collective bargaining agreement with the employer are not eligible for benefits for that period of time because the employer-employee relationship continues and their work was only voluntarily suspended for a certain designated time. Later, in Smith v. Mississippi Employment Security Commission, 344 So.2d 137 (Miss. 1977), an employee was granted and took a three-month leave of absence due to pregnancy. When she returned at the end of three months, her position had been phased out due to declining business. The issue before the Court was whether she left work voluntarily thereby disqualifying her for benefits. The Court held that she was not disqualified and could receive benefits beginning after the three-month leave of absence expired. In so holding, the Court stated:
Mrs. Smith did not leave her employment, but temporarily suspended it pursuant to an agreement with her employer. Such temporary suspensions of a continuing employment are common. Employees may be allowed vacation without pay, or they may arrange leaves of absence, for instance, because of illness or duty with the military reserve. In none of these cases can it reasonably be asserted that the employee has left work. If, during his leave, his position is terminated, he cannot be said to have left work voluntarily. Likewise, it seems to us that when an employer grants an employee a leave of absence because of pregnancy, she has not left work within the meaning of the statute.
.....
Mrs. Smith's case presents a similar situation. On August 30, 1974, she and her employer agreed that she would not work until December 3, 1974, and that she would not be paid for that time. Like the employees in Jackson, supra, she was entitled to return to work at the end of that period only if there was work available. As in Jackson, it cannot be said that she was laid off, and it cannot be said that her employment was terminated. When there was no work for her at the end of the agreed period, she was entitled to unemployment benefits, just as the workers in Jackson were entitled to unemployment benefits for the third week of their Christmas layoff.
According to these cases, an employee who voluntarily takes a leave of absence is not unemployed for the period of time during which their work is only temporarily suspended. Although the present case is slightly different on its facts, appellees who elected to take the leave of absence option are not "unemployed" within the meaning of the statute and are disqualified from receiving benefits.
In Mississippi Employment Security Commission v. Blasingame, supra, this Court stated:
The scope of review by the courts on an appeal from an order of the Board of Review is set out in the statute. Section 7388, Mississippi Code of 1942, as amended, reads in part as follows: `In any judicial proceedings under this section, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.' The legislature has clearly provided that judicial review of decisions of the Board of Review shall be confined to questions of law.
(237 Miss. at 747, 116 So.2d at 214).
See also Mississippi Employment Security Commission v. Fortenberry, 193 So.2d 142 *318 (Miss. 1966); Mississippi Employment Security Commission v. Ballard, 252 Miss. 418, 174 So.2d 367 (1965) and Mississippi Employment Security Commission v. Rakestraw, 254 Miss. 56, 179 So.2d 830 (1965).
We have concluded that the Commission erroneously applied the law to facts which are without substantial dispute. There is nothing to support a view that traveling to Greenwood, Clarksdale or Greenville from Cleveland would so substantially increase the degree of risk to health, safety or morals beyond that assumed by workers travelling from Tupelo to New Albany or that the commuting contemplated was so unusual or uncommon as to make the offered work "unsuitable." If "subtle differences" exist between this case and the New Albany-Tupelo case, as suggested by appellees, they have not been pointed out.
We hold that the Commission was in error, as a matter of law, in holding that appellees were unemployed and eligible for unemployment benefits under the statute. The judgment appealed from is reversed and judgment is entered here for appellant.
REVERSED AND JUDGMENT ENTERED FOR APPELLANT.
PATTERSON, C.J., and ROBERTSON, SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.