ON MOTION FOR REHEARING
IRVING, J.,
for the Court:
¶ 1. The motion for rehearing is granted. The original opinion is withdrawn, and this opinion substituted.
¶ 2. This is an appeal by Mississippi Employment Security Commission (MESC) from a judgment of the Circuit Court of Hinds County which reversed the decision of the Board of Review of the MESC denying unemployment compensation benefits to Scott Funches. MESC assigns the following issues: (1) whether the Board of Review’s decision finding that the employer was shut down from June 28, 1998 through July 11, 1998 is supported by the substantial evidence, such that the circuit court erred in overturning that decision, (2) whether the Board of Review’s decision, finding that Funches, et al., were disqualified from receiving benefits from June 28,1998 through July 11,1998, due to the employer’s holiday shutdown, is supported by substantial evidence, such that the decision was not arbitrary and capricious, and (3) whether the circuit court erred by finding that the contract between Delphi Packard Electric and the Union, rather than Mississippi Code Annotated Section 71-5-511(k) (Rev.1995), determines whether Funches, et al., are entitled to unemployment benefits during the plant’s agreed vacation/holiday shutdown.
¶ 3. Finding no reversible error, we affirm the decision of the circuit court.
FACTS
¶ 4. In 1998, Funches and others similarly situated were employed as part-time non-seniority employees with Delphi Packard Electric Company in Clinton, Mississippi. An agreement between the local union and the employer provided that Delphi would shut down its operations during Independence week with the option of designating as plant vacation shutdown week the week before or after the Independence week shutdown. The agreement provided that active employees without seniority such as Funches would be on “lay-off’ during the shutdown.
¶ 5. More specifically, the collective bargaining agreement contained three sections which are relevant to our determination. They are sections (lOlu), (lOlu) (1) and (lOlu) (7). Section (lOlu) provides that during the year 1998, the Independence week shutdown period would be June 29 through July 2. Section (lOlu) (1) authorizes the employer to designate as plant vacation shutdown week the week before or after the Independence week shutdown. In other words, the employer could designate as plant vacation shutdown week either the week prior to June 29 or the week following July 2. In our case, the week following July 2 was designated. Section (lOlu) (7) provides: “An active employee without seniority who is not scheduled to work shall be considered on layoff for the entire shutdown.” (emphasis added).
¶ 6. As stated, Funches and the other appellees here are active employees with *762 out seniority. During the shutdown, they applied for and were denied unemployment benefits. The denial was based on the conclusion reached by the Board of Review of the Mississippi Unemployment Commission that Funches and the other appellees were not involuntarily unemployed and were not available for work.
ANALYSIS OF THE ISSUES PRESENTED
¶ 7. All of the issues assigned by the Mississippi Employment Security Commission are interrelated and will be joined for purpose of discussion and resolution. The central issue is whether there is substantial evidence to support the decision of the Board of Review that Funches and others similarly situated are not entitled to benefits because of the dictates of Mississippi Code Annotated Section 71-5-511(k) (Rev. 2000) which provides that “[a]n individual shall be deemed prima facie unavailable for work, and therefore ineligible to receive benefits, during any period which, with respect to his employment status, is found by the commission to be a holiday or vacation period.”
¶ 8. The Commission undergirds its position not only with the quoted code section, but also with the holding in the following cases: Mississippi Employment Security Commission v. Jackson, 237 Miss. 897, 116 So.2d 830 (1960); Smith v. Mississippi Employment Security Commission, 344 So.2d 137 (Miss.1977). On the other hand, Funches contends that Buse v. Employment Security Commission, 377 So.2d 600 (Miss.1979), controls. We will discuss each case in term.
¶ 9. In Jackson, the court framed the issue before it this way: “The question for our decision involves the right to unemployment compensation for a period when the plant was shut down for vacations in accordance with the union contract.” Jackson, 237 Miss. at 899, 116 So.2d at 831.
¶ 10. The union contract in Jackson contained no specific provision designating when the Reliance Manufacturing Company would be shut down, but for some years it had closed its plant for a period of one week about July 4 and one week during or immediately following Christmas for the purpose of taking inventory. The union contract provided that all employees having a certain minimum service with the company would be entitled to one week’s vacation with pay to be taken between June 1 and September 30, in accordance with operation requirements of the company. The contract also provided that all employees having three years continuous employment with the company would be entitled to an additional week’s vacation with pay to be taken during Christmas week. On December 13, 1957, the company closed the plant and announced it would be closed until January 6, 1958, or for a period of three weeks, which, of course, included Christmas week of 1957. About half of the production employees were not entitled to vacation with pay during Christmas week because they had not been employed for a sufficient length of time. These employees filed claims for unemployment benefits with the Mississippi State Employment Security Commission for the three week period beginning December 13,1957. The Commission allowed the claims for the first and third week but disallowed the claims for the second week of the three week period. The basis of the denial of the claims for benefits for Christmas week was that the employees were not involuntarily unemployed and were not available for work within the meaning of the statute. Id. at 898-99, 116 So.2d at 831. The circuit court reversed the Commission, and on appeal, the Mississippi Supreme Court reversed the circuit court and *763 reinstated the decision of the Commission, ■with these instructive words:
The shutdown for Christmas week was in accordance with the union contract and the union represented all of the appellees. It cannot be said that appel-lees were unemployed within the meaning and purpose of the statute. They were not laid off; their employment had not been terminated, and the relationship of employer and employee continued during the week the plant was closed for the purposes stated.
Jackson, 237 Miss. at 901, 116 So.2d at 832. (emphasis added).
¶ 11. There is one distinct and important difference between our case and Jackson. In Jackson, the union contract was silent on the status of the employees who were not entitled to vacation pay during the shutdown. In our case, section (lOlu) (7) of the collective bargaining agreement specifically provides that “[a]n active employee without seniority who is not scheduled to work shall be considered on layoff for the entire shutdown.” It is not disputed that Funches and the other appellees here were active employees without seniority at the time of the shutdown and not scheduled to work during the shutdown. Moreover, Dorothy M. Johnson, the employer’s representative, left no doubt that Funches and the other appellees were active employees without seniority and that the relationship of employer and employee was severed during the shutdown:
Q. I have one last question. Mr. Funches and these part-time workers, they are active employees actively working at the plant.
A. That’s correct.
Q. But they don’t have seniority?
A. That’s correct.
Q. And if I can refer you to page 101,1 think it’s paragraph (lOlu) (7), I guess the last sentence of the top paragraph on 101, does this contract not state that active employees without seniority not scheduled to work will be considered on layoff for the entire shutdown period?
REFEREE: It would be at the top of the page.
A. Yes.
Q. Okay.
A. Yes, that’s exactly what it says.
Q. So, the, so, [sic] General Motors, in agreement with the IUE, has agreed to these individuals are laid off?
A. Yes.
¶ 12. At another point in her testimony, Johnson testified:
Q. Anything else you like to explain or cover at this time?
A. No, other than this category of employees are recalled as needed and that we, the management, at Delphi Packard Electric have no problem with them receiving unemployment benefits.
(emphasis added). At still another point in her testimony, Johnson testified:
Q. Would an employee of Mr. Funch-es’s category receive some kind of vacation pay during that week?
A. No, these employees are ... part-time employees are without any benefits and they are removed from the active roll during the vacation shutdown.
(emphasis added).
¶ 13. As stated, Johnson’s testimony makes clear that the relationship of employer and employee between the part-time non-seniority employees is severed during the shutdown because they are removed from the active employment roll. Consequently, for Funches and the others, *764 post-shutdown work was neither guaranteed nor expected. Therefore, these employees are either laid-off employees as specified in the collective bargaining agreement or laid-off employees by virtue of being removed from the active roll as testified by Johnson. In either case, a laid-off employee by definition cannot have employment status during a holiday or vacation shutdown period unless employment is available to him during the post-holiday or vacation shutdown period.
¶ 14. In Smith, Gloria J. Smith, due to pregnancy, took a leave of absence from her position as an accounting clerk at De-soto, Inc. on August 30, 1994. She was supposed to return from leave on December 3, 1994. It was company policy to grant a three-month leave of absence for pregnancy without terminating the employment. However, prior to December 3, Mrs. Smith was informed that because of declining business conditions her position had been temporarily eliminated, and she was being “involuntarily” laid off. Smith, 344 So.2d at 139. The employer, the Board of Review and the circuit court concluded that Smith had left work voluntarily and denied her benefits. Id. at 138.
¶ 15. On appeal, the Mississippi Supreme Court concluded that Smith was entitled to benefits beginning December 3, 1994, the day she was due to return to work but could not because she had been laid off. Id. at 140. While it is clear in Smith that Mrs. Smith voluntarily took a leave of absence, it is likewise equally clear that her employment continued during her leave of absence. She simply temporarily suspended it pursuant to an agreement with her employer. Id. at 139. She did not seek benefits for the period of time covered by her voluntary leave of absence.
¶ 16. Apparently, the Commission feels that since Funches and the others voluntarily left their employment during the vacation shutdown period pursuant to the collective bargaining agreement, they should be denied benefits for that period as was Mrs. Smith. That, however, is both a misunderstanding of the facts and a misreading of Smith. As stated, Mrs. Smith did not seek benefits for the period of time covered by her voluntary leave of absence. Further, during the period of the leave of absence, the employer/employee relationship continued to exist during the period of the leave of absence. That is not our case. We have already pointed out that Funches and the others were removed from Delphi Packard Electric’s active employment roll during the shutdown.
¶ 17. Buse involved a situation where Fred Buse was laid off on October 30, 1977, from his employment with Pennsylvania Tire & Rubber Company. He began receiving unemployment compensation one week after his last date of employment. On December 19, 1977, pursuant to a collective bargaining agreement, Pennsylvania paid Buse $525.23 for two weeks accumulated vacation pay for the past year. The Mississippi Employment Security Commission thereafter denied Buse unemployment compensation for the two-week period following such vacation payment. Buse, 377 So.2d at 601. The Commission based its denial of benefits on the premise that the vacation payment constituted “wages” and thereby eliminated unemployment benefits for the period. Id. Therefore, the issue in Buse was whether Buse had earned wages in December or whether the wages were earned prior to discharge. The Mississippi Supreme Court agreed with Buse that the wages had been earned prior to discharge. Id. We see little support in Buse in aid of the issues before us.
¶ 18. The critical focus must be on whether during the vacation shutdown period, Funches’s employment and the employer/employee relationship had already *765 been terminated or whether it had been just temporarily suspended to be resumed after the shutdown. For us, the answer is clear. According to the collective bargaining agreement, Funches was laid off. Based on the already quoted testimony of company employee, Johnson, Funches’s employment and the employer/employee relationship had ended. It came to an end prior to the shutdown, not after, because during the shutdown, Funches was removed from Delphi Packard Electric’s active employment roll. Nothing in the collective bargaining agreement required the removal of Funches from Delphi Packard Electric’s employment roll. While Funch-es was unavailable for work during what was termed a “vacation shutdown period,” it cannot be argued legitimately, on these facts, that Funches was on vacation. For the reasons set forth, we affirm the decision of the circuit judge reversing the decision of the Board of Review denying benefits.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY REVERSING THE DECISION OF THE BOARD OF REVIEW OF THE MISSISSIPPI EMPLOYMENT SECURITY COMMISSION DENYING BENEFITS IS AFFIRMED. THE COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, MYERS and CHANDLER, JJ., concur.